FIRST NATIONAL BANK, BISMARCK,
North Dakota, a Corporation, Plain-
tiff and Respondent,

v.

Garry O'CALLAGHAN and Eliza O'Calla-
ghan, Defendants and Appellants.

No. 8287.

Supreme Court of North Dakota.

June 2, 1966.

Cox, Pearce, Engebretson, Murray & Anderson, Bismarck, for plaintiff and respondent.

Higgins & Christensen, Bismarck, for defendants and appellants.

STRUTZ, Judge.

The defendants, for several years, have been customers of Universal Motor Company of Bismark, now known as McCarney Ford. They purchased a number of cars from this concern. One such purchase was made on June 14, 1961, when they purchased a used Falcon on conditional sales contract. Thereafter, on August 4, 1961, the parties desired to purchase a new 1961 Falcon. They thereupon executed a new conditional sales contract but, at the time it was signed, its terms were only partially filled out. One provision that was blank at the time of the execution of the August 4 contract was the amount for which the defendants were to be credited on the trade-in of the 1960 Falcon which they had purchased in June and which was partially unpaid. The blank spaces thereafter were filled in by the motor company and the contract then was assigned to the plaintiff bank and copy sent to the defendants. A dispute arose over the amount of credit which had been inserted in the contract as down-payment, the defendants contending that they should have had credit for an additional $390.29.

While this controversy was going on between the defendants and the motor company, the defendants found they were unable to make the payments as required by the August 4 contract. On December 2, 1961, they signed what in the record is described as a revision contract. Under this agreement, time for paying the contract was extended for an additional year. At the time the defendants signed this revision agreement, they had not yet settled their dispute with the motor company on what amount of credit they should have received on the August 4 contract. But the revision agreement provided for the payment of a definite sum, and the manner in which such balance should be paid. They now contend that the balance due as shown in the revision agreement was too high, because they had not been given the proper credit in the August 4 contract.

However, the defendants made payments called for under the provisions of the revision agreement until a balance of $390.29 remained to be paid. They then refused to make further payments and the assignee bank, as holder of the revision agreement, brought this action for the balance due. The defendants in their answer admit the purchase of the used Falcon on June 14, 1961; they admit buying a new car on August 4, 1961; they further admit the signing of the revision agreement providing for payment of a sum certain, and manner of its payment; they further admit that they have not paid $390.29 which is alleged to be due on the revision agreement. But they contend that this sum is not due and owing from them for the reason that Universal Motor Company, the plaintiff's assignor, failed to give them the right amount of credit on the conditional sales contract of August 4, 1961.

The trial court heard the case without a jury and ordered judgment for the plaintiff for the amount prayed for. The defendants have appealed to this court, demanding trial de novo.

■ Generally, where a non-negotiable instrument is assigned to another, the assignee takes subject to existing equities between the original parties, even though the assignee is a bona fide purchaser for value, without notice of any equities or defenses. 6 C.J.S. Assignments § 116, p. 1166.

■ Thus an assignee of a non-negotiable chose in action acquires no greater rights than those possessed by his assignor, and simply stands in the shoes of the assignor. 6 Am.Jur.2d, "Assignments," Sec. 102, p. 282.

■ It is also the general rule that parol evidence is inadmissible to vary or contradict the terms of a written contract between the parties to the contract, unless through fraud, mistake, or accident the contract as written does not express the real intention of the parties. Ives v. Hanson (N.D.), 66 N.W.2d 802; Hanes v. Mitchell, 78 N.D. 341, 49 N.W.2d 606.

■ The conditional sales contract of August 4, 1961, assuming that there were unfilled blanks at the time the defendants signed it, was not, by reason of that fact, a void instrument. The mere fact that a contract contains blanks when signed does not make it invalid. At best, it is a voidable contract if the blanks thereafter are filled out in an unauthorized manner, or for an unauthorized amount. Thereafter, when the contract of August 4, 1961, was revised on December 2, 1961, by the execution of the revision agreement, the terms of the August 4 contract were merged in the revision agreement, which then became a new agreement between the parties. A contract may be superseded or modified by a new contract. The parties to a contract, while it remains executory, may by a new and later agreement rescind such original contract, in whole or in part, or replace it by a substitute. 17 Am.Jur.2d, "Contracts," Sec. 459, p. 924. Thus, when the defendants signed the revision agreement on which the plaintiff brings this action, and agreed to pay a definite sum remaining due, any objections which they might have raised to the contract of August 4, 1961, were waived. By signing the revision agreement on December 2, with full knowledge of the facts they now contend should entitle them to further credits, they waived any right to assert such claims. The execution of the revision agreement superseded all oral negotiations and promises between the parties on the same subject which preceded or accompanied the execution of the revision contract. Sec. 9-06-07, N.D.C.C. The December 2 revision agreement became a new contract between the parties. It provided for payment of a definite sum and the manner of making such payments.

■ The above is decisive of this lawsuit. However, we believe that the defendants cannot prevail in this action for yet another reason. After they had full

knowledge of the fact that the salesman had not given them the credit to which they claim they were entitled, they made no effort to rescind the contract and continued to make installment payments for many months. Just what constitutes a ratification of a contract would, we believe, depend upon the facts in each particular case. Where a party, with full knowledge of the facts entitling him to rescind a contract or to defeat its performance, keeps the benefits thereof and continues to make the payments required by its terms, he is held to have elected to affirm the contract. Daniel v. Hamilton (N.D.), 61 N.W.2d 281. We believe that, under the circumstances, continuing to make payments for months, with full knowledge of the facts, did constitute ratification on the part of the defendants.

All of the differences and misunderstandings between the parties in this case stem from the fact that the contract of August 4, 1961, was signed before it had been completed. This writer believes that the signing of instruments in blank is a practice which should be avoided. It invariably will lead to dispute. Reputable business firms, as a rule, will not ask customers to sign contracts in blank, and persons who do sign blank contracts and later attempt to excuse their own carelessness in doing so by saying that they were too busy to wait until all information could be secured or the proper figures determined, cannot expect the courts to protect them from their own carelessness. He who will not reasonably guard his own interests when he has every reasonable opportunity to do so, where there is no circumstance which keeps him from doing so, must take the consequences.

The record sustains the judgment entered by the trial court, and that judgment is hereby affirmed.

TEIGEN, C. J., ERICKSTAD and KNUDSON, JJ., and CLIFFORD JANSONIUS, D. J., concur.

MURRAY, J., deeming himself disqualified, did not participate; Honorable CLIFFORD JANSONIUS, District Judge of the Fourth Judicial District, sitting in his stead.