R. L. E. COOK
v.
The KULJIAN CORPORATION
and
Damodar Valley Corporation.
Civ. A. No. 19029.

United States District Court
E. D. Pennsylvania.
Jan. 29, 1962.

William N. J. McGinniss, Ardmore, Pa., for plaintiff.

Walter J. Collins, Jr., David F. Maxwell, Philadelphia, Pa., of counsel. Obermayer, Rebmann, Maxwell & Hippel, Philadelphia, Pa., for The Kuljian Corp., defendant.

KRAFT, District Judge.

In our first opinion and order in this case we granted the motion of defendant, Kuljian, to dismiss as to counts 1 to 12, inclusive.

Counts 13, 14 and 15 pleaded claims sounding in tort. With respect to these counts, we said:

"Briefly, count 13 alleges that Kuljian in violation of the duty owed Cook, arbitrarily and maliciously refused to approve Cook's vouchers as a result of which Damodar refused to pay the vouchers; further, that Kuljian maliciously caused to be entered against Cook's account certain back charges which Kuljian knew were not valid or proper. Count 14 avers that defendants 'entered upon a course and concert of action' to defraud Cook by refusing to negotiate, each defendant claiming that Cook should seek redress from the other. Count 15 avers that defendants knowingly and maliciously circulated false rumors that Cook was not the owner of a certain housing development in India as a result of which Cook lost its prospective sale."

We pointed out that the complaint failed to include any allegation of the dates when or the places where the acts complained of occurred, and that such

allegations are material and necessary under F.R.Civ.P. rule 9(f), 28 U.S.C.A. Accordingly, we ordered that as to these counts Kuljian's motion to dismiss be granted, unless within 30 days of the filing of the order plaintiff should amend his complaint to cure those defects.

Cook amended his complaint, as ordered, and averred that the acts charged occurred in India on certain specified dates.

The case is presently before us on Kuljian's motion to dismiss the amended complaint, or, in the alternative, to stay the suit until Cook proceeds to arbitration, in accordance with the provisions of the two contracts involved.

The contracts contain identical arbitration clauses in the following form:

"8. ARBITRATION. If any dispute, question or controversy, the settlement of which is not herein specifically provided for should at any time arise between the Sub-Contractor and the contractor touching this agreement or any clause herein contained or the construction thereof or any matter connected with this agreement or the operation of the same or the rights or dutieis (sic) or liabilities of either party, then and in every case the matter in difference shall be referred to two Arbitrators, one to be nominated by the Sub-Contractor and the other by the contractor within one week or, in case of disagreement between the Arbitrators lasting one week, to an Umpire appointed by the Arbitrators in writing under their hands before proceeding with the arbitration, and the decision of such Arbitrators or Umpire, as the case may be, shall be final and binding on both parties. Any such reference shall in all respects conform to such statutory enactment or enactments regulating arbitration as may from time to time, be in force in India. Upon/and/any every such reference the assessment of the costs incidental to the reference and award re-spectively shall be in the discretion of the Arbitrators, or, in the event of their not agreeing, of the Umpire appointed by them. Notwithstanding the existence of any such dispute, question or controversy, the works shall be continued by the Sub-Contractor during the arbitration proceedings and no payments due or payable by the Contractor to the Sub-Contractor or *vice-versa* shall be with held on account of such proceedings, unless they are the subject matter or one of the subject matters of such arbitration proceedings."

Cook contends that even though Kuljian was a party signatory, it cannot enforce the contract against Cook because Cook cannot enforce the contract against Kuljian. Cook's reference here is to language in the contract which admittedly absolved Kuljian from direct *financial* responsibility thereunder, as noted in our earlier opinion. The obligation to arbitrate, however, is another matter. The arbitration clause expressly provides for arbitration of disputes between "the Sub-Contractor [Cook] and the contractor [Kuljian]." The mutual promises to arbitrate are consideration for each other.

Cook further contends that the matters in dispute here are not arbitrable under the terms of the arbitration clause, i. e., that the claims sound in tort; that the arbitration clause was intended to cover only differences and disputes arising from time to time during the actual performance of the work, etc. We think the question of the arbitrability of Cook's claim is not for us, but for the arbitrators themselves.

To be sure, since arbitration is a creature of contract, a court must always inquire, when a party seeks to invoke its aid to avoid recourse to the arbitration table, whether the parties have agreed to arbitrate the particular dispute. Here, however, the parties have couched the arbitration provision in the broadest and most all-inclusive terms. They agreed to arbitrate any dispute

"touching this agreement or any clause herein contained or the construction thereof." Since the arbitration promise itself is a clause in the agreement, the parties agree that its construction is for the arbitrators. It must follow, therefore, that the parties provided that any dispute as to whether a particular claim is within the arbitration clause is itself a matter for arbitration. The fact that Cook's claims sound in tort has no bearing, of course, on the question of their arbitrability. Almacenes Fernandez, S. A. v. Golodetz, 148 F.2d 625, 161 A.L.R. 1420 (2d Cir. 1945); Robert Lawrence Company v. Devonshire Fabrics, Inc., 271 F.2d 402 (2d Cir. 1959).

Cook next contends that "the federal general law controls," and that arbitration agreements are not enforceable thereunder. He cites several cases to us which, taken at face value, would surely sustain his position. However, the attitude of the courts toward arbitration agreements has undergone a remarkable transformation in recent years. Courts no longer view these agreements to "oust their jurisdiction" with the jaundiced eye of yesteryear. Perhaps the increasing volume of litigation has exerted a contributory influence. At any rate, the evolution in judicial thought was noted in the concurring opinion of Mr. Justice Frankfurter in Bernhardt v. Polygraphic Co., 350 U.S. 198, 76 S.Ct. 273, 100 L.Ed. 199 (1956). In consequence, the cases which Cook relies upon are no longer authority. The sharp break with the past can be demonstrated without unduly extending this opinion. In Hunkin-Conkey Const. Co. v. Pennsylvania Turnpike Commission, 34 F.Supp. 26 (D.C.M.D.Pa. 1940), it was held:

"State statutes making arbitration clauses enforceable are 'remedial statutes' and not 'substantive statutes,' and hence federal District Courts cannot enforce such statutes but must apply rule followed in federal courts, which does not permit enforcement of arbitration agreements to the extent of refusing to take jurisdiction where arbitration has not been instituted."

In the opinion of the Court in Bernhardt, supra (350 U.S. 198, 202–204, 76 S.Ct. 273, 276, 100 L.Ed. 199) it was said:

"We deal here with a right to recover that owes its existence to one of the States, not to the United States. The federal court enforces the state-created right by rules of procedure which it has acquired from the Federal Government and which therefore are not identical with those of the state courts. Yet, in spite of that difference in procedure, the federal court enforcing a state-created right in a diversity case is, as we said in Guaranty Trust Co. of New York v. York, 326 U.S. 99, 108, 65 S.Ct. 1464, 1469, 89 L.Ed. 2079, in substance 'only another court of the State.' The federal court therefore may not 'substantially affect the enforcement of the right as given by the State.' Id., 326 U.S. 109, 65 S.Ct. 1470. If the federal court allows arbitration where the state court would disallow it, the outcome of litigation might depend on the courthouse where suit is brought. For the remedy by arbitration, whatever its merits or shortcomings, substantially affects the cause of action created by the State. The nature of the tribunal where suits are tried is an important part of the parcel of rights behind a cause of action. The change from a court of law to an arbitration panel may make a radical difference in ultimate result. Arbitration carries no right to trial by jury that is guaranteed both by the Seventh Amendment and by Ch. 1, Art. 12th, of the Vermont Constitution. Arbitrators do not have the benefit of judicial instruction on the law; they need not give their reasons for their results; the record of their proceedings is not as complete as it is in a court trial; and judicial review of an award is more limited than judicial review of a trial—all as discussed in Wilko v.

Swan, 346 U.S. 427, 435–438, 74 S. Ct. 182, 186, 188, 98 L.Ed. 168. We said in the York case that 'The nub of the policy that underlies Erie R. Co. v. Tompkins [304 U.S. 64, 58 S. Ct. 817, 82 L.Ed. 1188] is that for the same transaction the accident of a suit by a non-resident litigant in a federal court instead of in a State court a block away should not lead to a substantially different result.' 326 U.S. at 109, 65 S.Ct. [at] 1470. There would in our judgment be a resultant discrimination if the parties suing on a Vermont cause of action in the federal court were remitted to arbitration, while those suing in the Vermont court could not be."

Since the arbitration agreement before us does not relate to a maritime transaction or involve interstate or foreign commerce, the United States Arbitration Act, 9 U.S.C. § 1 et seq., is without application. Bernhardt v. Polygraphic Co., supra. It follows, then, under the Erie doctrine, that in this diversity case the enforceability of the arbitration agreement is governed by state law. If the contract had been made and performed in Pennsylvania, it is clear that arbitration would be enforced. Act of April 25, 1927, P.L. 381, Sec. 1, 5 P.S. § 161; Nippon Ki-Ito Kaisha, Ltd. v. Ewing-Thomas Corp., 313 Pa. 442, 170 A. 286, 93 A.L.R. 1067 (1934); Britex Waste Co., Ltd. v. Nathan Schwab & Sons, Inc., 139 Pa.Super.Ct. 474, 12 A.2d 473 (1940). However, the contracts here involved were made and performed in India. Kuljian contends that the Pennsylvania cases, supra, are decisive in any event. We are not so persuaded. Those cases held only that a provision for arbitration to be held outside of the United States would be enforced by the courts of Pennsylvania. As we read the opinions, they fail to show the place of contracting. Moreover, and importantly, those decisions were rendered when arbitration was regarded in law as purely procedural in nature and effect.

We think a question of conflict of laws is tendered, a question that is governed by Pennsylvania law. Klaxon Co. v. Stentor Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Pennsylvania follows the generally accepted rule that the nature and extent of the duty and obligation imposed by a contractual undertaking are determined by the law of the place of contracting. McLouth Steel Corp. v. Mesta Machine Co., 214 F. 2d 608 (3rd Cir. 1954), and authorities there cited. Kuljian refers to portions of the Indian Arbitration Act of 1940, which appear to establish the enforceability of arbitration agreements. However, we think Cook is entitled to be heard on that question if he so desires. At any hearing thereon, the Uniform Proof of Statutes Act, 28 P.S. § 191 et seq., would, of course, be applicable.

ORDER

NOW, January 29th, 1962, it is ordered that the motion of defendant, Kuljian, to stay this suit pending arbitration is granted, unless within fifty (50) days of the filing of this order plaintiff shall order the case for hearing, as indicated in the foregoing opinion.