Fred NORDENSTROM, Plaintiff
and Respondent,

v.

Milton SWEDBERG, d. b. a. Swedberg Con-
struction Company, Defendant
and Appellant.

No. 8308.

Supreme Court of North Dakota.

June 30, 1966.

Stokes, Vaaler, Gillig & Warcup, Grand Forks, for appellant.

Shaft, Benson, Shaft & McConn, Grand Forks, for respondent.

ERICKSTAD, Judge.

This is an appeal by the defendant, Milton Swedberg, doing business as Swedberg Construction Company, from a judgment of the District Court of Grand Forks County in favor of the plaintiff, Fred Nordenstrom, and from an order of the District Court denying his motion for judgment notwithstanding the verdict or in the alternative for a new trial.

On May 7, 1959, Mr. Swedberg entered into a contract with the Franciscan Sisters of the Immaculate Conception, Little Falls, Minnesota, for the construction of a new addition to St. Gabriel's Hospital and for the remodeling of the existing hospital building. He was the only general contractor involved in the project. On May 22, 1959, he entered into a subcontract with Mr. Nordenstrom. In the subcontract Mr. Nordenstrom promised to furnish and install all lathing and plastering as shown on the plans and listed in the specifications and addenda. Mr. Nordenstrom commenced his work on the project in November or December 1959. He was not personally present on the project but was represented by several foremen who directed his employees during the various stages of construction. Mr. Swedberg was represented at the construction site by Ray Wendt, his general superintendent, until Mr. Wendt became ill, and after that by Bill Otteson, whom he called his carpenter foreman.

On November 22, 1960, Mr. Nordenstrom traveled to the construction site in response to a telephone call from his foreman or superintendent. He testified that when he arrived he found that his employees were being asked to do a considerable amount of work which was not included in his contract. He further testi-

fied that after talking with Mr. Wendt, he was advised that Mr. Wendt would sign or approve any "extras" if Mr. Swedberg would give his approval. He testified that he then on the same day telephoned Mr. Swedberg and informed him that there was extra work not called for in his contract and that if he did not receive a letter from Mr. Swedberg "stating that these extra items would be paid for," he would have to remove his crew the next morning. He said that Mr. Swedberg informed him that he would be paid for any extra work not called for in the contract and that a letter would be sent to him confirming this promise.

The letter received by Mr. Nordenstrom, admitted in evidence as plaintiff's exhibit 2, reads as follows:

[Letterhead omitted]

November 23, 1960

Mr. Fred Nordenstrom
Plastering Contractor
2810 Belmont Road
Grand Forks, Minnesota [North Dakota]

Re: St. Gabriel's Hospital
    Little Falls, Minnesota

Dear Mr. Nordenstrom:

In regard to the above job, there will be some changes and some extras in your work that will be above and beyond the original contract. Any items which are not specifically called for on the plans and specifications will, of course, be an extra.

We wish that you could have your foreman keep track of these items and list them for us along with the bill so that we can keep our records straight and bill the owner properly.

Very sincerely yours,

SWEDBERG CONSTRUCTION COMPANY

By (signed) M. Swedberg
    Milton Swedberg

———◆———

Mr. Nordenstrom's crew continued to work on the project, and his foremen recorded work performed and materials used in doing what they considered to be extra work not included in Nordenstrom's contract. These records were kept in the form of tickets which were signed by Nordenstrom's foremen and submitted to Mr. Wendt or Mr. Otteson, who signed or initialed them. The tickets were then mailed to Mr. Nordenstrom. This procedure was followed until Mr. Nordenstrom completed his work on the hospital in May 1961.

Mr. Nordenstrom's subcontract was for the sum of $48,000. He claimed that Mr. Swedberg owed him an additional $10,829.-68. This amount was for the extra work and materials which he believed he had expended on the project and was computed on the basis of the tickets he had received from his foremen. Mr. Swedberg claimed that he owed only $2,572.05. The jury, however, found that he owed $10,829.-68. Mr. Nordenstrom's bill for extra work and materials arose solely from the remodeling of the existing hospital building.

Mr. Nordenstrom began this action to recover the sum which he claimed was due for extra work on the hospital. Prior to the commencment of the trial, Mr. Swedberg moved the trial court to dismiss the action and made motions for a directed verdict at the close of the plaintiff's (Nordenstrom's) case and at the close of all of the evidence. The court denied these motions. The jury returned a verdict for the amount claimed for the extra work. After the verdict had been returned, Mr. Swedberg made a motion for judgment notwithstanding the verdict or in the alternative for a new trial. The trial court denied the motion and ordered that judgment be entered in the amount of the verdict. Mr. Swedberg is appealing from the order denying his motion and from the judgment.

Mr. Swedberg has assigned eight specifications of error. We first consider specifications 2 and 6, which read as follows:

2. The Trial Court erred in denying the Defendant's Motion to Dismiss made, filed and argued to the Court prior to the empaneling of the jury or the commencement of the trial of this matter; said Motion to Dismiss was based upon the failure of the Plaintiff to arbitrate the disputes between the parties pursuant to paragraph "d" of the Subcontract between the parties, pursuant to paragraph XI of the Subcontract between the parties, and pursuant to paragraph No. 7 of the general conditions of the Contract between the parties.

6. The Court erred in denying Defendant's Motion for Judgment Notwithstanding the Verdict or in the Alternative for a New Trial.

In regard to specification 2, Mr. Swedberg contends that the subcontract contained a provision which required the parties to submit their dispute to arbitration before commencing this action. In support of this contention he directs our attention to specific provisions of the subcontract which read as follows:

XI. To be bound to the Contractor by the terms of the contract with the owner, the general conditions, special conditions and specifications and addenda, and to conform to and comply with the drawings and specifications and addenda, to furnish such shop drawings or samples as may be required, and to assume toward the Contractor all the obligations and responsibilities that the Contractor assumes in and by the aforesaid documents toward the Owner, in so far as they are applicable to this particular subcontract.

D. That where arbitration of disputes is granted the Contractor under the terms of his contract on the project covered by this agreement, such right of arbitration shall be extended to the Sub-Contractor, and that in disputes arising between only the general Contractor and the Sub-Contractor, right of arbitration shall be extended to the Sub-Contractor even though the contract between the general Contractor and the owner contains no reference to arbitration.

Mr. Swedberg argues that the effect of paragraph XI of the subcontract is that Mr. Nordenstrom is bound by the general conditions of the general contract with the owner. Paragraph 7 of the general conditions follows:

7. Arbitration.—(a) It is mutually agreed that all disputes arising in connection with this contract shall be submitted to arbitration in accordance with the provisions of the current Standard Form of Arbitration Procedure of the American Institute of Architects and that all findings of fact by the arbitrators under this agreement shall be conclusive and binding on both parties. It is further mutually agreed that the decision of the arbitrators shall be a prior condition to any right of legal action which either party to the contract may have against the other.

(b) The work under this contract shall not be stopped or delayed in any

way during the arbitration proceedings except by written mutual consent of both parties to the contract, and such mutual consent shall stipulate whether extension of the time for completion of the contract will be authorized by such stoppage or delay.

(c) Demand for arbitration in connection with any dispute shall be filed in writing with the Architect and with the other party to the contract. Any demand for arbitration shall be made within thirty days after the dispute has arisen if practicable, but, in any event, no demand for arbitration shall be made after the date of final payment except in the case of a dispute arising in connection with any guarantee provisions of the Contract Documents.

(d) The arbitrators hereunder shall have authority to award to the party whose contentions are approved as being in conformity with contract requirements such sum as they, or a majority of them, consider is proper to compensate the injured party for any loss in connection with the proceedings; and, if they find that the arbitration proceedings were demanded without reasonable cause, they may in addition award the injured party damages for delay, unless precluded by agreement between the contracting parties before arbitration. The arbitrators shall set their own compensation and determine the total amount of such compensation and other costs and expenses of the proceedings incurred by them, unless otherwise agreed prior to the proceedings, and shall assess the total of the costs of the proceedings upon either or both parties to the contract in such proportions as they, or a majority of them, may approve.

Mr. Nordenstrom argues that paragraph D of the subcontract only established a right to arbitration and did not require the parties to arbitrate their disputes. He further argues that any dispute over extra work to be performed was resolved by his agreement with Mr. Swedberg to record the extra work performed.

■ It should be noted that paragraph D of the subcontract provided that "such right," which the contractor had under his contract on the project to arbitrate disputes, was also extended to the subcontractor. Swedberg's contract with the owners did include an agreement to arbitrate, and this agreement provided that arbitration was a prior condition to the bringing of a legal action. The right to arbitration which was extended to Mr. Nordenstrom was identical to Mr. Swedberg's right to arbitrate under his contract, and thus Mr. Nordenstrom was also obligated to arbitrate prior to the commencement of this action.

After considering the provisions of the subcontract, in light of the general conditions of the general contract, we believe that Mr. Nordenstrom agreed to be bound by the general conditions of Mr. Swedberg's contract with the owners, including the provisions in the general contract requiring that all disputes be submitted to arbitration and that a decision of the arbitrators be a prior condition to any legal action.

■ Mr. Swedberg next contends that § 9-07-11, N.D.C.C., requires that the provisions of the contract be enforced by this court according to the laws of Minnesota. That section reads as follows:

What law governs.—A contract is to be interpreted according to the law and usage of the place where it is to be performed, or if it does not indicate a place of performance, according to the law and usage of the place where it is made.

It is not disputed that the subcontract was wholly performed in the state of Minnesota. Jurisdiction was obtained in the state of North Dakota by the attachment of Mr. Swedberg's property which was found in this state.

Mr. Nordenstrom contends that arbitration was not required because an agreement to arbitrate is not specifically enforceable in North Dakota. In support of this contention he refers us to § 32–04–12, N.D.C.C., which reads as follows:

What obligations cannot be enforced specifically.—The following obligations cannot be enforced specifically: * * *

3. An agreement to submit a controversy to arbitration * * *.

He further contends that arbitration is provided for in Chapter 32–29, N.D.C.C., which is entitled Judicial Remedies; and that, therefore, arbitration is a question of remedy to be determined by the law of the forum. He argues that the arbitration provision in the subcontract is not a bar to this action and refers to § 9–08–05, N.D.C.C., which he believes is authority for this argument. This section reads as follows:

Restricting enforcement of rights void. —Every stipulation or condition in a contract by which any party thereto is restricted from enforcing his rights under the contract by the usual legal proceedings in the ordinary tribunals or which limits the time within which he thus may enforce his rights is void, except as otherwise specifically permitted by the laws of this state.

While we agree with Mr. Nordenstrom's contention that an agreement to submit a controversy to arbitration is not specifically enforceable in this state, we are not convinced that our statutes relating to arbitration are applicable in this case. We have before us on this appeal a contract which was performed in Minnesota, and thus we believe that a conflict of laws question is presented. It is our opinion that in view of our conflict of laws rule, which is set forth in § 9–07–11, N.D.C.C., this court must apply the substantive law of Minnesota in determining the rights of the parties under the contract.

Is the agreement to arbitrate substantive in nature or procedural in nature? While this court has not had occasion to decide this question, several federal courts, including the Supreme Court of the United States, have found arbitration agreements to be substantive in nature and have held that the conflict of law rule of the state where they were sitting applied.

In Bernhardt v. Polygraphic Co., 350 U.S. 198, 76 S.Ct. 273, 100 L.Ed. 199, petitioner, who was a resident of New York, entered into a contract in that state with a New York corporation. Petitioner subsequently became a resident of Vermont and brought a suit for damages under the contract in a Vermont court. The suit was removed to the federal district court on the basis of diversity of citizenship. The contract contained a provision that in case of any dispute the parties would submit the matter to arbitration. The respondent corporation moved for a stay of the proceedings so that the controversy could be arbitrated in New York and alleged that the law of New York governed the question whether the arbitration provision of the contract was binding. The district court ruled that under Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, the arbitration provision of the contract was governed by Vermont law and held that under that state's law the arbitration agreement was revocable. The court of appeals reversed, and certiorari was granted by the Supreme Court. After construing a federal statute not applicable on this appeal, the Supreme Court stated the question presented in *Bernhardt* as follows:

* * * whether arbitration touched on substantive rights, which Erie R. Co. v. Tompkins held were governed by local law, or was a mere form of procedure within the power of the federal courts or Congress to prescribe.

Bernhardt v. Polygraphic Co., 350 U.S. 198, at 202, 76 S.Ct. 273, at 275, 100 L.Ed. 199.

The Supreme Court reversed the circuit court decision and remanded the case to the district court, saying a question of conflict of laws was tendered and that the determination of this question was governed by the Vermont conflict of laws rule.

The United States Court of Appeals, Second Circuit, in a decision rendered in 1959, used the following language in analyzing the basis for the Supreme Court's holding in *Bernhardt* that local law applied:

> * * * So the Court decided the case by holding: (1) that the federal Arbitration Act was inapplicable because the limitation to commerce and maritime matters in Section 2 applied as well to Section 3 and the rest of the Act; and, (2) that the enforceability of an arbitration agreement, apart from the Arbitration Act, "substantially affects the cause of action created by the State" * * * and, because the dispute between the litigants was sufficiently substantive to bring into operation the Erie doctrine, the Court refused to apply the rule that the law of the forum governs matters of procedure. The Court flatly disagreed with the statement that arbitration "is merely a form of trial." Instead, the Court held that it was dealing with "a right to recover that owes its existence to one of the States, not to the United States"; and the view of the federal District Judge in Vermont as to the Vermont law relative to the enforceability of arbitration agreements was adopted. This conclusion was reached notwithstanding the fact that in several other contexts the enforceability of an arbitration agreement had generally been considered to be procedural only.

Robert Lawrence Company v. Devonshire Fabrics, Inc., 271 F.2d 402 (2d Cir. 1959).

The trend in the federal courts to view arbitration agreements as substantive in nature is evidenced by the following language taken from a 1962 United States district court decision:

Cook next contends that "the federal general law controls," and that arbitration agreements are not enforceable thereunder. He cites several cases to us which, taken at face value, would surely sustain his position. However, the attitude of the courts toward arbitration agreements has undergone a remarkable transformation in recent years. Courts no longer view these agreements to "oust their jurisdiction" with the jaundiced eye of yesteryear.

Cook v. Kuljian Corporation, 201 F.Supp. 531 (E.D.Pa.1962).

In *Cook* the parties had entered into and performed a contract in India. The federal district court, sitting in Pennsylvania, recognized that if the contract had been made and performed in that state, the arbitration agreement would have been enforced. However, the court stated that because the contract had been made and performed in India, a question of conflict of laws was tendered, a question that was governed by Pennsylvania law. The conflict of laws rule in that state provided "that the nature and extent of the duty and obligation imposed by a contractual undertaking are determined by the law of the place of contracting." Cook v. Kuljian Corporation, *supra*. The court therefore held that the enforceability of the arbitration agreement would be determined by the law of India.

Another federal district court has recently cited *Bernhardt* as authority for the statement: "The right to arbitrate is a substantive, not a procedural right." Konstantinidis v. S. S. Tarsus, 248 F.Supp. 280, at 287–288 (S.D.N.Y.1965), aff'd 354 F.2d 240.

The question presented in *Bernhardt* and *Cook* was whether the arbitration agreement should be enforced according to the law of the forum or according to the conflict of laws rule of the state where the federal court was sitting. The analogy between these cases and the case before

us is clear. Although in the federal cases jurisdiction was based upon diversity of citizenship and in this case it is acquired upon an attachment proceeding, the same question is tendered.

■ In view of the apparent trend indicated by these decisions, we are constrained to hold that the rights of the parties under the arbitration provisions of the contract are substantive in nature and that our applicable conflict of laws rule, § 9–07–11, N.D.C.C., requires us to apply Minnesota law in determining these rights.

■■ We do not believe that this determination is contrary to § 9–08–05, N.D.C.C., which was quoted earlier in this opinion. This section provides that any stipulation or condition in a contract which restricts the enforcement of rights is void, *"except as otherwise specifically permitted by the laws of this state."* [Emphasis added.] In our opinion § 9–07–11, N.D.C.C., comes within that exception. An agreement to submit a controversy to arbitration is not against the public policy of this state. In Johnsen v. Wineman, 34 N.D. 116, 157 N.W. 679, at 681, this court said: "It is well settled that courts favor the settlement of disputes by arbitration."

■ Chapter 32–29, N.D.C.C., specifically sets forth the provisions governing arbitration in this state. Although § 32–04–12(3) prohibits specific enforcement of arbitration agreements contained in contracts performed in North Dakota, it cannot be said to indicate a public policy against specifically enforcing an arbitration agreement contained in a contract both made and performed in a state which holds such an agreement irrevocable and enforceable.

We now consider the applicable Minnesota law relating to the enforcement of arbitration agreements in order to determine the effect of the agreement to arbitrate contained in the contract between the parties on this appeal.

The Supreme Court of Minnesota recently indicated the pertinent sections of the Minnesota Code Annotated which apply to written agreements to arbitrate.

Since April 24, 1957, written agreements to arbitrate are interpreted with reference to the Uniform Arbitration Act then adopted (now Minn.St. 572.08 to 572.30).

Niazi v. St. Paul Mercury Insurance Company, 265 Minn. 222, 121 N.W.2d 349, at 352.

Section 572.08, Minn.Stat.Ann., provides that an agreement to submit any controversy to arbitration is valid, enforceable, and irrevocable. Although parts of this section have been amended since the commencement of this action, the amendments do not affect the applicability of the section to the arbitration agreement in this case. It contained the following language when the contract in the instant case was executed:

[572.08] Validity of arbitration agreement. A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract. This act also applies to arbitration agreements between employees or between their respective representatives unless otherwise provided in the agreement.

Minn.Sess.Laws 1957, ch. 633, § 1.

The procedure to compel or stay arbitration is set forth in § 572.09, Minn.Stat.Ann., which reads in part:

Procedure to compel or stay arbitration. (a) On application of a party showing an agreement described in section 572.08, and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration, but if

the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue so raised and shall order arbitration if found for the moving party, otherwise, the application shall be denied.

After Mr. Nordenstrom commenced this action, Mr. Swedberg served him with a written interrogatory pursuant to Rule 31, N.D.R.Civ.P., inquiring whether Mr. Nordenstrom had ever consented to arbitration or whether he would now consent. The interrogatory was served prior to the trial in district court. Mr. Nordenstrom answered the interrogatory in the negative.

The question which we must now decide is whether arbitration is a condition precedent under Minnesota law to a judicial determination of the merits of this case.

As previously stated, § 572.08, Minn. Stat.Ann., provides that an arbitration agreement is valid, enforceable, and irrevocable. We have determined that an arbitration agreement exists between the parties, and the record shows that Mr. Nordenstrom refused to arbitrate prior to the commencement of the trial in district court. Section 572.09(a), Minn.Stat.Ann., provides that when these factors are present, the court shall order the parties to proceed with arbitration.

The language contained in paragraph 7 of the general conditions of Mr. Swedberg's contract with the owners and which we have determined to be binding upon Mr. Nordenstrom is particularly applicable to the question we are now considering. The pertinent part of paragrah 7 reads as follows:

It is further mutually agreed that the decision of the arbitrators shall be a prior condition to any right of legal action which either party to the contract may have against the other.

Prior to Minnesota's adoption of the Uniform Arbitration Act, its supreme court indicated that an agreement to make arbitration a condition precedent to legal action would be enforced.

* * * Arbitration simply removes a controversy from the arena of litigation. It is no more an ouster of judicial jurisdiction than is compromise and settlement or that peculiar offspring of legal ingenuity known as the covenant not to sue. Each disposes of issues without litigation. One no more than the other ousts the courts of jurisdiction. The right to a jury trial, even in a criminal case, may be waived. So, also, may the right to litigate be waived. Such waiver may be the result of contract or unilateral action.

Park Const. Co. v. Independent School Dist. No. 32, 209 Minn. 182, 296 N.W. 475, at 477, 135 A.L.R. 59.

Arbitration has been looked upon with favor in this state both in the statutory and decision field.

Zelle v. Chicago & N. W. R. Co., 242 Minn. 439, 65 N.W.2d 583, at 589.

In a recent Minnesota case decided pursuant to § 572.08, Minn.Stat.Ann., the court held an agreement to arbitrate to be irrevocable by force of this section in the absence of a provision in the contract reserving the right to revoke the agreement. The contract in that case contained a provision similar to the one in the instant case which provided that a decision of the arbitrators shall be a condition precedent to any right of legal action. Layne-Minnesota Co. v. Regents of Univ. of Minn., 266 Minn. 284, 123 N.W.2d 371, at 377.

In view of the Minnesota statutes and decisions which have heretofore been discussed, we believe that the parties agreed to submit any dispute which might arise between them to arbitration prior to the commencement of a legal action and that this agreement is specifically enforceable under Minnesota law.

If the parties have inferentially contended that the dispute involved in this case is not one which the parties agreed to submit to arbitration, it should be noted that the Minnesota Supreme Court, in construing § 572.09, Minn.Stat.Ann., has held that if the question of the parties' intention as to the scope of the provision for arbitration is reasonably debatable, it must be first resolved by the arbitrators. In such a case, the court held that the sole issue before the court was whether an agreement to arbitrate existed. Layne-Minnesota Co. v. Regents of Univ. of Minn., supra. We have determined that such an agreement does exist in the instant case. Under the circumstances, § 572.09(a), Minn.Stat.Ann., requires that the parties arbitrate.

A final question relating to the arbitration provision is whether Mr. Swedberg waived his right to demand arbitration by not asserting this right in a timely manner.

■ Mr. Nordenstrom contends that Mr. Swedberg waived his rights to arbitration by failing to comply with the provisions of subsection (c) of paragraph 7 of the general conditions of the general contract. We disagree. The contract between the owner and Mr. Swedberg, the terms of which are binding on Mr. Nordenstrom through his contract with Mr. Swedberg, requires the parties to submit any dispute to arbitration and makes the decision of the arbitrators a prior condition to legal action. This means that the responsibility to demand arbitration falls on the complaining party.

■ The record shows that in addition to the interrogatory which Mr. Swedberg served on Mr. Nordenstrom inquiring whether the latter would submit the dispute to arbitration, Mr. Swedberg pleaded the contract arbitration provision in his amended answer and asked that Mr. Nordenstrom be ordered to submit his claims to a board of arbitrators. We believe that this was a timely demand on Mr. Swedberg's part on the basis of Minnesota law.

The Minnesota Supreme Court has had occasion to speak on the subject of waiver of the right to arbitration:

* * /* If the defendant had interposed an answer without pleading the arbitration provision, waiver could have been found under the rule of Independent School Dist., etc. v. A. Hedenberg & Co., Inc., 214 Minn. 82, 7 N.W.2d 511, which holds that arbitration is waived by answering to the merits without a demand for arbitration or a motion to stay the suit until arbitration was had. See, also, Anderson v. Twin City Rapid Transit Co., 250 Minn. 167, 84 N.W.2d 593. But in this case the provision of the insurance contract calling for arbitration was pleaded in the answer. If the insurer had participated in and then withdrawn from arbitration proceedings, a waiver might have been found under the rule of Knutson v. Lasher, 219 Minn. 594, 18 N.W.2d 688. In this case the insurer appears to have been, and to be, willing to arbitrate.

Niazi v. St. Paul Mercury Insurance Company, 265 Minn. 222, 121 N.W.2d 349, at 355.

From the time of the commencement of this action Mr. Swedberg appears to have been willing to arbitrate. In view of the language in *Niazi,* we do not believe Mr. Swedberg has waived his right to demand that Mr. Nordenstrom's claims be submitted to arbitration.

Having decided that Mr. Swedberg is entitled to have Mr. Nordenstrom's claims submitted to arbitration as a condition precedent to Mr. Nordenstrom's bringing

of a legal action, we need not consider the remaining specifications of error assigned by Mr. Swedberg.

We therefore conclude that the judgment of the trial court must be set aside. The case is remanded with instructions to the trial court to permit the plaintiff to amend his complaint to comply with the condition precedent if suit is deemed necessary after arbitration is had or if arbitration is hereafter waived.

TEIGEN, C. J., and KNUDSON, MURRAY, and STRUTZ, JJ., concur.