Thomas **RETTIG**, Plaintiff and Appellant,

v.

**TAYLOR PUBLIC SCHOOL DISTRICT NO.
3 By its School Board, Elmo Elkins, et
al., Defendants and Appellees.**

**TAYLOR PUBLIC SCHOOL DISTRICT NO.
3 By its School Board, Elmo Elkins, et
al., Plaintiffs and Appellees,**

v.

Thomas **RETTIG**, Defendant and Appellant.

Civ. Nos. 8897, 8898.

Supreme Court of North Dakota.

Oct. 23, 1973.

Freed, Dynes & Malloy, Dickinson, for appellant.

Mackoff, Kellogg, Kirby & Kloster, Dickinson, for appellees.

PAULSON, Judge.

These are appeals from two judgments of the county court with increased jurisdiction of Stark County. These cases were combined for purposes of argument in this court and will be combined in this opinion.

In May of 1969 the Taylor Public School District No. 3 accepted the bid of Thomas Rettig for transporting children by schoolbus to the Taylor Public School. Rettig's bid was the only bid for Route No. 3 and was in the amount of $560 per month.

At the time the bid was opened and accepted, Rettig told the Taylor school board

that he would be moving from his farm home into Taylor in June of 1969 and that during the school year he would therefore not be driving the last four miles of Schoolbus Route No. 3. The Taylor school board, apparently because Rettig had been snowed in at his farm home during some school days in past winters, agreed that Rettig need not drive the last four miles of his route which led to his farm.

The contract was mailed to Rettig in May of 1969 but was not signed and returned by him to the Taylor school board until September of 1969, at which time he commenced his duties as bus driver. From September of 1969 to November of 1971, Rettig drove the route for the contracted rate of $560 per month, with only minor variations. In November of 1971 the Taylor school board reduced Rettig's compensation by $96 per month, ostensibly because he no longer maintained his residence on the farm which he had been renting, since such farm had been sold and Rettig had disposed of his farm machinery by holding an auction sale. Rettig continued to drive the route at the reduced monthly compensation rate until February 28, 1972. On that date, he discontinued driving the schoolbus, which he had notified the Taylor school board he would do if he did not receive the full contract rate for the months of November and December of 1971 and January and February of 1972.

Rettig brought an action against Taylor Public School District No. 3, claiming damages in the amount of the reduction in compensation for four months and the profits he would have earned had the contract been continued for its full term.

Taylor Public School District No. 3 in turn brought an action against Rettig, claiming as damages the expenses it incurred in providing transportation caused by Rettig's failure to drive for the full term of the contract. The county court with increased jurisdiction held in Rettig's action that his route had been changed by the Taylor school board and that Rettig had not demanded arbitration as required

by § 15–34.2–10 of the North Dakota Century Code. That court accordingly dismissed Rettig's complaint with prejudice.

In the Taylor public school district's action against Rettig the county court with increased jurisdiction held that Rettig had breached the contract with the Taylor public school district and the court awarded the district damages.

Rettig has appealed from both of these judgments and has asserted numerous specifications of error. We will combine some of these specifications for the sake of brevity and coherence.

The first combined specification of error is that the county court erred in its finding that the route Rettig was supposed to drive was changed by the school board and that such change justified the reduction in his compensation rate.

The county court with increased jurisdiction found that the route Rettig drove was changed in November of 1971 and that such change of route justified the $96 per month reduction in compensation.

The testimony on this subject was that when Rettig no longer could claim a legal residence at his farm, due to its sale by his landlord, the route he drove was officially shortened by four miles and the compensation accordingly reduced. Prior to the sale of the farm, the opinion of the school board was that Rettig could still claim the farm as his legal residence and could transport his own children to and from the farm as part of the schoolbus route. After the sale of the farm and Rettig's auction sale, Rettig's residency claim was no longer tenable and the route was changed.

The county court also found that due to Rettig's termination of his service on February 28, 1972, the Taylor public school district incurred expenses in providing transportation for school children for the remainder of the school year. This finding was based partially on a statement prepared by the Taylor school board clerk. The statement was an exhibit of the school

board and was verified at trial by the testimony of the clerk of the school board.

■ Rule 52(a) of the North Dakota Rules of Civil Procedure provides in pertinent part:

### "RULE 52

### "FINDINGS BY THE COURT

*"(a) Effect.* In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially . . .. *Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses.* . . ."

The instant cases were tried to the court without a jury and the court found the facts specially. Upon a review of the findings in light of the evidence and testimony presented, we are unable to say that the findings of the county court with increased jurisdiction are clearly erroneous. See Trengen v. Mongeon, 206 N.W.2d 284 (N.D.1973); Kee v. Redlin, 203 N.W.2d 423 (N.D.1973).

The next specification of error deals with whether the trial court erred in finding that the alleged oral agreement made between Rettig and the Taylor school board did not alter the written contract. The testimony indicates that at the time Rettig's bid was opened and accepted in May of 1969, he informed the school board that he was moving his family from the farm he rented at the end of the bus route into Taylor and that he would therefore not be driving the four extra miles to his farm each day. The school board agreed to this without reducing Rettig's compensation at that time. Rettig signed the contract in September of 1969 and now claims that the oral agreement of May of 1969 alters the written contract consummated in September of 1969 when it was signed by Rettig and sent back to the school board.

Section 9–09–06, N.D.C.C., provides:

"A contract in writing may be altered by a contract in writing or by an executed oral agreement and not otherwise. An oral agreement is executed within the meaning of this section whenever the party performing has incurred a detriment which he was not obligated by the original contract to incur."

Section 9–06–07, N.D.C.C. provides:

"The execution of a contract in writing, whether the law requires it to be written or not, supersedes all the oral negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument."

Section 9–06–08, N.D.C.C., provides:

"A contract in writing takes effect upon its delivery to the party in whose favor it is made or to his agent."

■ In the cases at bar the oral agreement of May of 1969 was made before the written contract became effective by its signing by Rettig and its delivery to the Taylor school board in September of 1969. Therefore, under § 9–06–08, N.D.C.C., there was no effective written agreement that could have been altered by the oral agreement of May of 1969. In addition, the oral agreement was not executed, as required by § 9–09–06, N.D.C.C., because Rettig did not incur any additional detriment under the oral agreement that he would not have incurred under the written contract before it was signed. In fact, he incurred less detriment under the oral agreement because he was excused from traveling the additional miles to and from his farm home when it was part of his route.

■ As a result the written contract became the culmination of the agreements between the school board and Rettig, as provided by § 9–06–07, N.D.C.C.; that is, such written agreement superseded all prior negotiations. See Rieger v. Rieger,

175 N.W.2d 563 (N.D.1970); Schue v. Jacoby, 162 N.W.2d 377 (N.D.1968).

The next specification of error relates to whether the county court erred in finding that Rettig was bound to demand arbitration under § 15–34.2–10, N.D.C.C. Section 15–34.2–10 provides:

"In case of a change in the route or routes specified in a vehicular transportation contract and the failure of the school board and the contract holder to agree on an adjustment of the compensation specified in the contract, the matter shall be submitted to arbitration. One arbitrator shall be appointed by the board, and one shall be appointed by the contract holder. The two arbitrators thus appointed shall appoint a third arbitrator. The [a]ward of the arbitrators shall adjust the compensation of the contract holder to meet the changed situation and shall be binding upon the district and the contract holder."

■ The challenge to this statute is that it is constitutionally invalid as denying due process and the right to trial by jury, because there is no express judicial review provided.

It is generally held that the validity of arbitration statutes depends in great part on provisions for judicial review of the arbitrator's decision. In 5 Am.Jur.2d, Arbitration and Award, § 9, at page 526, the rule is stated thusly:

"A distinction may be drawn between directly coercive statutes, the effect of which is to close the courts to litigants by compelling resort to arbitrators for final determination of rights, and statutes designed merely to aid the courts by providing for arbitration in certain cases but reserving a right of appeal to the courts. Statutes of the latter class have generally been held valid."

In Hjelle v. Sornsin Construction Co., 173 N.W.2d 431 (N.D.1969), and Nelson Paving Co., Inc. v. Hjelle, 207 N.W.2d 225 (N.D.1973), this court considered the arbitration statute applicable to disputes over contracts with the North Dakota State Highway Department, §§ 24–02–26 through 24–02–33, N.D.C.C. The court held those statutes to be valid as they provided for reference to Chapter 32–29, N.D.C.C., in which judicial review of the arbitrator's decision is provided, namely, in § 32–29–08, N.D.C.C.

In the instant case there is no express reference in § 15–34.2–10, N.D.C.C., to Chapter 32–29, N.D.C.C. However, we do not believe that such express reference is necessary. As we held in Hjelle v. Sornsin Construction Co., *supra*, in paragraph 3 of the syllabus:

"Courts will construe statutes so as to harmonize their provisions with the Constitution if it is possible to do so, to the end that they may be sustained."

We therefore hold in the cases at bar that, for the purpose of complying with the procedural requirements in the arbitration of disputes over compensation due to changes in schoolbus routes, reference should be made to Chapter 32–29, N.D.C.C., from § 15–34.2–10, N.D.C.C. As Chapter 32–29 provides for judicial review of the arbitrator's decision the challenged statute is valid.

■ The arbitration requirement is part of the contract in the instant case, even though it is not written therein. In Miller v. South Bend Special School Dist. # 1, 124 N.W.2d 475, 478 (N.D.1963), we said:

"This court, on numerous occasions, has held that the law existing when a contract is executed becomes a part thereof."

See cases cited in *Miller, supra.* The present arbitration statute for schoolbus-driving contracts, § 15–34.2–10, N.D.C.C., was passed in 1971. However, it replaced an identical statute that was in effect in 1969 when the contract in question was ex-

ecuted. That statute was § 15–34–16, N. D.C.C., which was repealed in 1971.

■ Rettig has argued in this case that the Taylor school board had a duty equal to his to demand arbitration when a dispute arose over the route change. Section 15–34.2–10, N.D.C.C., provides, in pertinent part:

". . . the failure of the school board and the contract holder to agree on an adjustment of the compensation specified in the contract, the matter *shall* be submitted to arbitration. . . ." [Emphasis supplied.]

As stated previously, this statute became part of the contract in question. The onus to comply with the statute is equal upon both parties in the absence of an agreement to an adjustment of the compensation. In the absence of an agreement, no change in compensation may be compelled by either party without an award of the arbitrators, who "shall adjust the compensation of the contract holder to meet the changed situation".

■ The schoolbus-driving contract in the case at bar provides, in part:

"The board reserves the right to alter or change any route to fit the desires of patrons. Compensation or deduction to the bidder will be at the rate of $5.00 per stop plus mileage."

This provision must be tempered by § 15–34.2–10, N.D.C.C., which is read into the contract. Reading the two provisions together, we conclude that when the school board changed the route it could also initiate a change in compensation. However, the school board could not compel that change. In this situation, Rettig, as the aggrieved party, had the duty to demand arbitration if he did not agree with the amended compensation and if the parties could not agree on an adjustment. Having failed to exhaust the required remedy of arbitration, Rettig could not prosecute his case in court, and the county court with in-creased jurisdiction properly dismissed Rettig's action.

■ Conversely, the Taylor Public School Board also has a duty under the contract (which contract includes the statutory duty to arbitrate present in § 15–34.-2–10, N.D.C.C.) to arbitrate disputes over compensation before it brings action in court. In the instant case, the school board initiated the reduction in compensation, to which Rettig should have objected by demanding arbitration. The consequences of his not doing so have been previously discussed. However, the school board did not demand arbitration before it sued Rettig for its expenses incurred in finding substitute transportation. Had the school board exhausted the required arbitration remedy, it would have had grounds for appeal in court from the decision of the arbitrators. As the situation presently exists, we believe that it is unjust for the school board to have judgment against Rettig because the school board also did not comply with the contract. The judgment in favor of the school board and against Rettig is, accordingly, reversed. See Nordenstrom v. Swedberg, 143 N.W.2d 848 (N.D.1966).

■ The final specification of error relates to the county court's excluding evidence offered by Rettig about statements made by the Stark County state's attorney. The evidence was excluded on the basis that it was hearsay testimony, since the state's attorney was available for giving testimony himself. We agree with the county court with increased jurisdiction that such testimony would have been hearsay.

The judgment of dismissal of Rettig's claim is affirmed and the judgment in favor of the school board and against Rettig is reversed.

ERICKSTAD, C. J., and KNUDSON, and VOGEL, JJ., concur.

VOGEL, J., not being a member of the Court at the time of submission of this case participated on the briefs filed.

TEIGEN, Judge (dissenting in part in *Rettig* and concurring in *Taylor*).

I dissent in part in *Rettig* and concur in *Taylor*. I construe Section 15–34.2–10, N. D.C.C., as providing that the school board may unilaterally change the route specified in a vehicular transportation contract but may not, upon effecting a change of the route, unilaterally change the compensation specified in the contract. If a change in compensation as provided by the contract is desired by either party, the statute clearly provides the remedy. It states:

"* * * the failure of the school board *and* the contract holder to agree on an adjustment of the compensation specified in the contract, the matter shall be submitted to arbitration." [Emphasis added.]

The onus to comply with the statute is equal upon both parties. In the absence of an agreement, no change in compensation may be compelled by either party without an award of the arbitrators, who "shall adjust the compensation of the contract holder to meet the changed situation." Thus when the school board, in this case, unilaterally reduced Rettig's monthly compensation by $96 per month it acted outside the law.

Rettig disagreed with the unilateral action taken by the school board and served notice upon it that he would not agree to the reduced compensation. He advised that he would continue to perform under the contract for a period of four months but if, by then, he had not received the full compensation provided by the contract, he would discontinue driving the route. The school board failed to pay the deficiency and, after four months, Rettig discontinued performance.

Subsequently, Rettig instituted the instant action, seeking recovery of the amount of the reduction for the four-month period that he operated, and damages in the amount of profits he would have earned had the contract been carried out for its full term.

The statute, Section 15–34.2–10, N.D.C.C., does not require that the contract holder must seek arbitration to enforce payment provided by the contract. Arbitration is operable only in the event an adjustment of the compensation specified in the contract is sought by one or the other of the parties to the contract, to which the other party will not agree. This adjustment could be either up or down, depending upon the change in the route. Here, the adjustment was downward and Rettig, the contract holder, was not seeking such an adjustment. It was the school board. Rettig's claim in this action is based upon the contract as written and not on the basis of an adjustment of the compensation provided in the contract. The action is premised on a breach of contract by the school board. There is no question in my mind but that the school board breached the contract when it adjusted the compensation downward without the benefit of an agreement or an arbitration award. By its unilateral, unlawful action the school board set in motion the series of acts which subsequently occurred. It should not be heard now to complain that Rettig does not have standing to sue for the delinquencies in payment under the contract terms because he failed to demand arbitration before instituting this suit. Furthermore, the court should not entertain jurisdiction to permit the school board to recover for additional expenses incurred in transporting the school children, the necessity of which was brought about by the school board's unlawful act.

A rider attached to the contract and made a part thereof is referred to in the majority opinion. It states:

"The board reserves the right to alter or change any route to fit the desires of patrons. Compensation or deduction to the

bidder will be at the rate of $5.00 per stop plus mileage."

The majority then reason that the Board could change the route and also the compensation, but it could not compel a change in the latter, and that, therefore, Rettig was the aggrieved party and had a duty to demand arbitration.

I do not agree that this is a correct legal statement. It is true that by this contract provision the parties attempted to agree upon some basis for a compensation adjustment in the event of a route change. However, it is only partial. No formula is provided for determining the mileage change nor does the contract provide a specified rate per mile. The contract merely provides for the lump-sum payment of $560 per month for the services to be rendered. It is therefore clear that, although there may have been an attempt to provide by contract for an adjustment of compensation for route changes, either up or down, it is not specific, understandable or computable under the terms of the contract. It only invites disagreement which, if not resolved, would have to be settled by arbitration as provided by the statute. There was a failure of both parties to agree on an adjustment of compensation and a failure of both parties to demand arbitration.

If I were to apply the principle that arbitration must be sought before commencing a lawsuit, I would apply it against the school board in its action against Rettig for damages because it was the actor who brought about the disagreement when it acted unilaterally in reducing the compensation. Had the school board followed the law and taken no action until an arbitration award had been obtained, the problem would not have arisen.

It is my opinion that both judgments should be reversed. I would allow judgment in favor of Rettig against the school district in the amount of $384 ($96 reduction times four months) and leave the parties where they were at the end of the four-month period. Thus I would disallow Rettig's claim for damages for the period subsequent to his discontinuance of performance, and dismiss the school district's action against Rettig for damages. This, I believe, is the best and most equitable solution possible under the circumstances.